The next case on the calendar today is United States v. Solano, No. 18-3403. Thank you. Good morning. May it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of Juan Solano. In Gaines and Brutus, this Court held that instructing a jury that a testifying defendant's interest in the outcome of his trial creates a motive to lie undermines the constitutional presumption of innocence because it presupposes the defendant's in a close case that turns on witness credibility, such an instruction rises to the level of plain error. Those precedents resolve this appeal. Below, the District Court instructed the jury that any witness with an interest in the outcome, an instruction that the government has conceded applied to Solano, had, quote, a motive to testify falsely. As Gaines explains, that instruction impermissibly assumed Solano's guilt because it was only true if he was, in fact, guilty. But in Gaines and Brutus, we were looking at instructions that identified the defendant individually as having a motive, having an interest in the outcome. Here we have a much more generic instruction that says witnesses may have an interest in the outcome. And it occurred in the context of a, you know, 30 pages or so of transcript of a jury instructions. Why should we take that as having the same impact on a jury's decision-making as the much more specific and targeted observations in the instructions in Gaines and Brutus? For a few reasons, Judge Carney. First, this was the instruction on witness credibility. It applied to all witnesses, including, as the government has acknowledged, Solano. In addition, in this case, Solano was by far the most obvious example of an interested witness. His interest in the outcome was by far the most profound, and it was the only one that was established by evidence, evidence that the government itself elicited when it asked Solano whether he was motivated by not wanting to go to jail. And he agreed that he was. Furthermore, Gaines denounces, and this is at page 246 of the decision, quote, any instruction that tells a jury that a testifying defendant's interest in the outcome creates a motive to testify falsely. And if one examines the express holding of the Gaines decision, it's dispositive. And that's again at 246. I'm sorry, so Gaines denounces and advises against, but it doesn't prohibit this particular instruction, right? So let me turn to the express holding of Gaines, Your Honor. We hold that the trial court's jury instructions about a defendant's testimony must not assume that he is guilty. This was an instruction about Solano's testimony. It was an instruction for assessing the credibility of every witness, including Solano. And when the district court did mention Solano in particular, it gave no additional or distinct instruction for assessing his credibility. This was an instruction about his credibility, and it assumed his guilt in clear violation of the express holding of Gaines. And to make the point a little more plain, if Solano was innocent, as the Fifth Amendment required that he be presumed, then he did not have a motive to lie. He had a motive to tell the truth. Why it impacted the jury, if I can turn to that matter, Your Honor, was this was a close case. The best evidence that it was a close case is that the jury returned a split verdict, acquitting Solano on the conspiracy count. The only disputed factual question in this case was Solano's knowledge. And the key evidence on that point was competing witness testimony. The government introduced no contemporaneous documentation of the law enforcement officer's testimony that Solano inculpated himself. Sotomayor, any other witnesses here that had a real interest in the result of the case? Your Honor, it's — Gaines acknowledges that law enforcement officers may have interests in the outcome of the cases they testify. But what is the — we're supposed to say that law enforcement officers have an interest in finding people guilty, whether they're innocent or not? Certainly, this — That's very strange. I completely agree, Your Honor. But — and I'm certain that the government would never request such an instruction or consent to one in a case where a defendant did not testify. That said, do — is it normal to have such an instruction where the defendant — I mean, given that the police are testifying, the defendant does not testify? Would — would it be proper for a jury, for a court, to — to instruct that the police may have an interest in the result, and therefore — I'm sorry. There's no presumption of innocence so that the problem of Gaines wouldn't apply in that situation. So you could give it if it were a proper instruction. But why is it a proper instruction at all? I don't think it is, Your Honor. And Your Honor is correct. There would be no constitutional impediment to that instruction. But as I've said, in the majority of cases, as this Court is aware, defendants don't testify. And as a result, in the majority of cases where law enforcement officers do, this instruction isn't given. And as I say, I am certain that the government would fight tooth and nail the giving of this instruction with application to testifying law enforcement officers. Maybe you could turn to harmless error. Yes. If we were to agree with you, there were multiple law enforcement officers who pointed to GPS tracking information about calls and texts that were made and so on, and about the interviews that Mr. Solano gave after he was arrested or detained, at least. Why — why isn't it harmless error? Yes, Your Honor. And so the government mentions a number of points. But as we lay out in our reply brief, they all reduce to credibility conflicts. And I'll put it this way. The principal disputed question in this case — the only disputed question in this case was knowledge. The principal evidence, as is made clear through the government's own jury arguments, was the law enforcement officer's testimony that Solano admitted knowledge. Solano took the stand and denied making that admission. There was no recording of this interview. Solano was not asked to execute a written confession. The law enforcement officer who took notes of the interview did not record this admission in his notes. This is as pure a credibility conflict as there can be. And as this Court said in Meta, when a case is close — and we know that this one was — and the case boils down to witness credibility, a gains error satisfies the third prong. Let me also take one step back and say this. Mr. Solano was a 46-year-old United States citizen with no criminal record. He had been a commercial truck driver for 20 years. In this case, just as he had done thousands of times before in his professional life, he picked up a sealed container at a Marine terminal and drove it — sealed — to a warehouse in the Bronx. He was paid $600, the going rate for this action. There is no direct evidence of knowledge and no evidence other than the law enforcement officer's undocumented testimony of his admission that he, in fact, possessed the necessary culpable knowledge. To put it as succinctly as I can, this was a credibility case, and the erroneous instruction went to witness credibility. Thank you very much. We'll hear from the government. May it please the Court. Alexander Mindlin for the United States. The ruling that Appellant's counsel wants this Court to make is not the law at present, much less does it declare an obvious law, as this Court would have to find in order to hold that there was plain error here. Mr. Habib is arguing that when the Court in Gaines said that district courts couldn't tell the jury that testifying defendants had a motive to lie, the Court was really making a broader rule. He says it was also ruling out any statement that included testifying defendants. He's saying with the Gaines Court — Excuse me. Was there any other direction given by the district court regard to witness credibility other than this one statement? I believe the Court also said that in general, in assessing witness credibility, the jurors could consider a witness's interest in the case. So in evaluating the credibility of witnesses, you should take into account that the witness who testified may benefit in some way in the outcome. Such an interest in the outcome creates a motive on the part of the witness to testify falsely, may sway the witness to testify in a way that advances his own interest. And this is tied to a colloquy or question and answer between counsel for the government and Mr. Solano in trial. I didn't see anything else in the collected jury instructions that would have referred to anyone or any other testifying witness or to anyone but Mr. Solano with regard to credibility and how the jury should approach it. Well, Your Honor, it was a key part of the defense argument in this case that, in fact, the government witnesses were lying and were disposed to see the defendant as a criminal and had no regard for the truth. Can you cite me any case in which there are only police witnesses and that an instruction of this sort has been given? Your Honor, I cannot. But I know, I do not believe that this instruction has any, is selected typically where defendants are selected. No, but I'm just, you know, in this case, doesn't this instruction apply only to Solano? No, Your Honor. I mean, I know it is said in general terms, but you can say anything in general terms and you can say what, that it means only a person. You can speak of judges on a court who are more than 80 years old and you're respecting everybody, but how many are there? Two points in that regard, Your Honor. The first is that the defense argued that the government witnesses were lying and had no interest in the truth. So in this particular case, that instruction could be taken to refer to others as well. That they would benefit in the outcome of the case? That they had an, no, Your Honor. Where Mr. Solano would be incarcerated if the case went one way or another, what was the benefit? A reputational benefit as to the testifying officers? What was the, how would they benefit in the outcome of the case? Without adopting the reasoning of this court, this court held in Gaines in a footnote that anyone should understand that law enforcement officers have an interest in the, that modern law enforcement officers, I think is the phrase, have an interest in the outcome of the case. And certainly it was helpful to the defense for the jury to be told that because the defense argued, for example, that supervising Homeland Security agent Etienne as a former probation officer was inclined to see everyone as a criminal. He used a hammer. Who saw everyone as a nail? But the other point I wanted to make in response to Judge Leval always says you and the police work for the Department of Justice, not for the Department of Public Prosecutions. You don't have an interest in convictions. You have an interest in convictions if somebody is guilty. And that's a very different interest than the kind of thing we're talking about here. Your Honor, I agree. But as of now, certainly as of the time of this trial and as of now, it hasn't been held, either in the precedent cases to Gaines or in the successors' published opinions stemming from Gaines, that a general instruction saying interested witnesses for motive of death falsely is an error. Do you agree that as a general rule, an instruction of this sort is not desirable. Then we come to the question of plain error. Is this a situation where, given the way the whole instruction was given, that is, there was no discussion of the proffered instruction, there wasn't a written instruction as it should have been done. One proper procedure is, where this was given at the last minute, that this is a very odd plain error situation where, practically speaking, the sandbagging, which is why we have a plain error rule, couldn't possibly have applied here, so that, you know, this is a mighty strange case to turn on plain error. And if it did, by the way, wouldn't this be an adequacy of counsel? So aren't we going just around the circle rather than just dealing with it directly? No, Your Honor, and for two reasons. The first is that not only did defense counsel say immediately afterward that he had no problem with the charge, but this issue was never raised in defense post-trial briefing. There's no indication that at the time or in post-trial briefing anyone saw this supposed error. The other reason is that this Court laid out the standard in the Adoniji case for what warrants reversal on de novo consideration of a preserved issue regarding a violation of Federal Rule of Criminal Procedure 30B. And the standard is that, and this is 31F3rd 58, the standard is that the instruction the reversal is warranted where the defendant can show that he was misled in formulating his arguments as a result of his inability to review the charge. Now, again, that's for a preserved issue, but there's no argument here that defendant would have given his summation differently if he had been aware of the charge. And in fact, if you look at 30B, it's explicitly crafted to ensure that defense counsel isn't sandbagged, to borrow Your Honor's word, by giving a summation that incorrectly anticipates what the charge will be. He doesn't ---- Do you disagree that this was a credibility case at the end of the day? I accept that credibility was important to this case, Your Honor. It was critical, wasn't it? I mean, the police notes didn't record the statement that the officers testified as to as reflecting knowledge that there was drugs, there were drugs in the containers. And he denied knowing. And we get this, you know, extended chronology of, you know, texts and messages and when the call to Dalrymple was made and so on. It seems his behavior seems entirely consistent with innocent conduct. I think it's a stretch, Your Honor, for appellant's counsel to say that this case turned on the bare word of one person against three because the officer's notes contain numerous other statements that were consistent with their account of what was said and really didn't make any sense in the view of what the appellant said happened. For example, there were notes about the person named Lenine. There were notes about a person named Tyrone. There were notes about cocaine under bananas. None of those. Those were prior interactions in which Mr. Solano had dealt with Mr. Dalrymple, at least in one of those. Wasn't that the case? But in Mr. Solano's testimony at trial, he gave, frankly, incredible explanations for why those things had come up. Was there any? Is there any? That goes directly to credibility, doesn't it? Your Honor, I'm just making the case that this is not a question of one person's report against what, in fact, were three. Was there any testimony or any record evidence suggesting that Mr. Solano was paid more than $600, the ordinary rate for picking up the container and transmitting it? Okay. Or was to be paid, I suppose. Was to be paid, yes. With that, I'd like to just briefly address the argument made in the appellant's brief regarding the Brown case. I didn't hear you. I'm sorry. The appellant's brief addresses the Brown case that Your Honor authored, discussing the possibility that plain error can flow from principles as opposed to case law. As Your Honor will recall, Brown was an extremely different case. There were a string of Supreme Court opinions making clear that religious discrimination couldn't be the basis for any number of different government decisions. And this Court had held in dicta in the Nelson case that, in fact, it should be the basis for a Batson challenge. So to apply Brown in this context and hold that plain error should be found where there has never been any application of the Gaines rule to the context of a general instruction doesn't make sense. And I'd like to say something else about Gaines, which is that it makes — it clearly distinguishes between general instructions, even those that by implication refer to the defendant, and instructions that in the voice of the court single out the defendant. And it does that in its discussion of interested witnesses having a deep — a deep interest in the case. And it makes clear that instruction like that, not deep interest, but the interested witness instruction, should live in the general section. And it's permissible there, even though by implication it affects the defendant. All right. Thank you very much. Thank you. We'll hear from Mr. Habib. You have two minutes. Thank you, Your Honor. Judge Calabresi, you're quite correct. For all practical purposes, Solano was the only witness to whom this instruction maintained. He was, as this Court — his interest, as this Court said in Gaines, was obvious. Indeed, Gaines said nothing could be more obvious to a jury than a defendant's profound interest in his own case. As Judge Carney has pointed out, the law enforcement officers did not face a 10-year mandatory minimum term of imprisonment if the jury disbelieved them. And more to the point, Solano's interest was proved with evidence. And as we set forth in our reply brief, the district court told the jury that it could apply the motive-to-lie charge if it found evidence that a witness would benefit from the outcome. In this case, the government elicited from Solano on cross-examination that he was motivated by his desire not to go to jail, as every defendant is. But only guilty defendants take that interest and turn it into a motive-to-lie. Innocent defendants, as Mr. Solano was presumed, do not. In addition, I would say that even if this Court entertains the government's argument that the instruction was potentially applicable to other witnesses, that would not mitigate the constitutional violation. The constitutional violation here and the violation of the Gaines holding was the assumption that Solano was guilty. Finally, Judge Calabresi, I agree it would be most strange for this Court to affirm on the basis that police officers also have a motive-to-lie to secure improper convictions. Finally, on the question of prejudice, Judge Carney, you have it right. This is a credibility case. I just heard the government concede that credibility was important. I heard the government argue for affirmance on the basis that Solano's trial testimony was incredible. And I have not heard, because there is not, one piece of documentary evidence that corroborates the central inculpatory testimony in this case, that is, the law enforcement officer's assertion that Solano admitted knowledge. Thank you very much. Thank you. If you have any arguments, we'll reserve decision.